(C. D. 1303)

NUODEX PRODUCTS CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 20, 1951)

*Strauss & Hedges* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott* and *Richard F. Weeks*, special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Cole, Judge: Plaintiff, engaged in the manufacture of metal naphthenate, imported merchandise invoiced as "Naphthenate Drier," which the collector classified as a lead compound under paragraph 46 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 46),[1] carrying a duty assessment of 30 per centum ad valorem. Plaintiff's principal claim, as expressed in counsel's brief, is "that this merchandise is properly dutiable at 25 per centum ad valorem under Paragraph 5 of said act, as a chemical mixture." [2]

Several alternative claims are made, none of which has been formerly abandoned, but as they have not been pressed, and as the record is insufficient to even remotely support any one, or all, no further reference will be made to them.

A chemist employed by plaintiff, and its only witness, described the merchandise in question as "a rather viscous, semi-viscous liquid of a yellow color," that was sold to paint manufacturers as a paint drier, to reduce "the drying time for paint." An analysis, following a method approved by the National Bureau of Standards "for determination of lead and lead products," disclosed, so far as pertinent to the present issue, that the imported substance consisted of 30.5 per centum lead, being the metal content, and 64.8 per centum nonvolatile. He considered the material not to be a chemical compound because "a chemical compound has certain characteristics which this compound does not have. A chemical compound by definition is a substance formed by the union of two or more elements. These or this compound will be formed, no matter how these two elements are reacted. You will always get the same type of compound. This compound formed in this way will have definite melting points, boiling points, definite characteristics which are identical for each and every piece of this compound made. This is not true in the case of any lead naphthenate." He characterized the imported material as a mixture.

The Government chemist, Bella Kahn, who analyzed the present merchandise, testified that it consisted of 31 per centum lead, 54.7 per centum naphthenic acids, primarily in the form of lead compounds, and 15.4 per centum mineral spirits, not differing, materially, from the analysis, *supra*, offered by plaintiff.

Defendant's other witness, manager of technical sales for Advance Solvents & Chemical Corp., manufacturer of chemical products, including metallic naphthenates, recognized the merchandise in

---

[1] Par. 46. Lead: Acetate, white, 2½ cents per pound; acetate, brown, gray, or yellow, 2 cents per pound; nitrate, arsenate, and resinate, 3 cents per pound; and all other lead compounds not specially provided for, 30 per centum ad valorem.

[2] Par. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

·question as a commodity in which he had dealt since 1928, as a manufacturer, in its use, and also sales, and testified that "it is sold as lead naphthenate," and "commercially on the part of manufacturers of lead naphthenate and also by the consumers of lead naphthenate it is considered to be a lead compound." Concerning use of the merchandise, the witness stated that "material such as this lead naphthenate is almost universally used by the paint and varnish industry not only in the United States but all over the world and in use it is simply added as it is, or it is further diluted with petroleum solvent to varnish and dry oil and alkyd resins for the purpose of inducing those films of oil and varnish to oxydize and solidify and so-call 'dry'."

The weight of the evidence shows that the lead naphthenate in question is a paint drier, recognized in the industry as a lead compound, thereby definitely supporting the collector's classification.

*Fraisse Laboratories (Inc.)* v. *United States*, 56 Treas. Dec. 356, T. D. 43638, cited by plaintiff, is not favorable to the claim under paragraph 5, *supra*. That case concerned several medicinal substances, all of which had been classified, according to one of their elements, either as a compound of glycerophosphoric acid, or a mixture of bismuth, or a mercurial preparation. Sustaining the importer's claim for classification as medicinal preparations, the court held in effect that when each of the items was considered in the light of all of their components, all of them were something more than the particular ingredient or substance upon which the official classification was based.

Comparable reasoning is not to be applied here. The present merchandise is within the class of products covered by the provision for "all other lead compounds not specially provided for," in paragraph 46, *supra*, adopted by the collector, rather than "under Paragraph 5 as a chemical mixture," claimed by plaintiff.

While there is no real need, in deciding this case, to consult congressional intent in enactment of paragraph 46, *supra*, our research has included reference to the Summary of Tariff Information, 1929, a publication compiled by the United States Tariff Commission for use by the Committee on Ways and Means in its consideration of legislation ultimately enacted as the Tariff Act of 1930. That document (vol. 1, p. 239) definitely supports the conclusion we have reached in that it refers to the said provision for "ALL OTHER LEAD COMPOUNDS N. S. P. F.," and under the heading, "Description and uses," states, "This group includes a variety of lead derivatives used as reagents in chemical laboratories, *in paint driers* [italics added], in the manufacture of rubber, and for miscellaneous purposes."

The protest is overruled and judgment will be rendered accordingly.